106 F.3d 401
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michelle MURRAY, Plaintiff-Appellant,
v.
UNITED STATES BUREAU OF PRISONS; Correctional Officers
Darren Hankens, William Frakes, Timothy Harris, Dale
Burchett, Jeff Tussey, William Underwood, Paul Patterson,
Chuck Williams, Ron Moore, Bryan Miller, and Billy Caudill;
Captain Stephen Hobart; Lieutenants John Jones, David
Schell, and William Knipp; Unit Manager Paul Helo;
Counselor Don Smith; Case Manager Barry Colley; Assistant
Warden Gary Huss; Assistant Supervisor of Education Leonard
Marr; Chief of Health Services Lusito Benin; and
Disciplinary Hearing Officer Sam Biafore, Defendants-Appellees.
 No. 95-5204.
 United States Court of Appeals, Sixth Circuit.
 Jan. 28, 1997.
 
 Before: KENNEDY, JONES, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 At all times relevant to this action, Michelle Murray was both a biologically male transsexual and a federal prisoner. Although she[1] has undergone extensive hormone therapy, has had breast implants, and has been castrated, she remains anatomically male. Accordingly, the United States Bureau of Prisons has assigned her to male prisons for incarceration. On June 16, 1993, Murray was transferred from the Federal Correctional Institute (FCI) in Morgantown, West Virginia, to FCI Ashland, Kentucky. Murray alleges that, during her tenure at FCI Ashland, prison officials there undertook a variety of actions that violated her constitutional rights. On November 4, 1993, she filed a complaint in the United States District Court for the Eastern District of Kentucky, seeking damages under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), in compensation for those alleged violations. Murray subsequently filed another complaint in the same court, alleging that prison officials had instituted disciplinary proceedings against her in retaliation for the filing of the first complaint.
 
 
 2
 The two actions were consolidated, and the parties agreed to refer the case to a magistrate judge for all purposes, including entry of judgment. On November 7, 1994, the magistrate judge awarded summary judgment to all of the defendants, with one exception. The magistrate judge held that Murray's allegation that Officer Timothy Harris physically abused her, if true, would state a claim under the Eighth Amendment, accordingly, he held the case over for a jury trial. On November 29, 1994, after a two-day trial, the jury returned a verdict in favor of Harris, and the magistrate judge entered a judgment consistent with that verdict.[2] Murray now appeals from the entry of judgment against her. We consider the November 7 order of summary judgment and the November 29 judgment separately, and affirm both.
 
 
 3
 * The claims on which the magistrate judge awarded summary judgment to the defendants are divisible into six categories. First, Murray alleges that on several occasions prison officials have violated her rights by placing her in segregated confinement, in some cases ostensibly for her own safety and in other cases as punishment for her violations of orders to wear a brassiere. Second, she claims that she is entitled to receive hair and skin products that are necessary for her to maintain a feminine appearance. Third, she claims that prison officials have repeatedly harassed her verbally, disparaging her for her status as a transsexual and for what they presume to be her sexual preference. Fourth, she alleges three separate instances of physical abuse by prison officials. Fifth, she claims that the prison's physician, Dr. Lusito Benin, exhibited deliberate indifference to her medical needs by failing to return the dosage of her estrogen treatments to the level that she had received when she first became a federal prisoner. Finally, she alleges that prison officials wrote up a false incident report in retaliation for the filing of her original complaint in this action. We discuss each set of claims in turn, mindful that our review of an award of summary judgment is de novo, and that in order to prevail the defendants below must show that, viewing the evidence in the light most favorable to the plaintiff, no rational fact-finder could return a verdict in her favor.
 
 A. Segregated Confinement
 
 4
 While at FCI Ashland, Murray was placed in segregated confinement on several occasions. The defendants argue that the first two such occasions were justified in order to protect Murray from assault by other inmates. She was first placed in segregation on June 16, 1993, the day that she arrived at FCI Ashland, and was held there for six days until the warden approved her placement into the general population. Shortly thereafter, she was assaulted by an inmate, and she was again placed in segregation on June 25 for twelve days during the pendency of the investigation into the attack.
 
 
 5
 The magistrate judge held that neither placement stated a constitutional claim, and we agree. With respect to the first placement, the defendants certainly acted within the bounds established by either the Eighth Amendment or the Due Process Clause of the Fifth Amendment in segregating Murray until they could determine whether she would be safe in the general population; indeed, they may have subjected themselves to an Eighth Amendment claim if they had failed to do so. See Farmer v. Brennan, 114 S.Ct. 1970, 1985 (1994) (reversing award of summary judgment where question of fact existed as to officials' knowledge of risk of harm faced by transsexual in general prison population). The defendants' concerns are borne out by the fact that an attack did, in fact, occur after Murray's release from segregation. With respect to the second placement, the defendants had a valid interest in protecting Murray both from retaliation for reporting the assault and from attempts to dissuade her from testifying at a disciplinary proceeding. See Hewitt v. Helms, 459 U.S. 460, 476 (1983).
 
 
 6
 All of Murray's subsequent instances of segregated confinement arose as penalties for her repeated refusal to obey orders to wear a brassiere. Murray objects that the orders were improper. The magistrate judge held that the orders were reasonable efforts to maintain institutional order and security, and that, since there was no evidence that the orders constituted an exaggerated response to those considerations, he was required under Bell v. Wolfish, 441 U.S. 520, 547-48 (1979), to defer to the expert judgment of prison officials on this matter. Again, we agree. "An inmate is not entitled to the clothing of his choice, and prison officials do not violate the Constitution simply because the clothing may not be aesthetically pleasing or may be ill fitting." Knop v. Johnson, 667 F.Supp. 467, 475 (W.D.Mich.1987), appeal dismissed, 841 F.2d 1126 (6th Cir.1988). The orders to wear a brassiere were valid; therefore, the defendants properly placed Murray in segregated confinement for her failure to obey those orders.
 
 B. Hair and Skin Products
 
 7
 Murray alleges that, while she was at FCI Morgantown, she was provided with hair and skin products that she claims are necessary for her to maintain a feminine appearance. Murray claims that the failure of prison officials at FCI Ashland to continue that practice violates the Eighth Amendment. The magistrate judge applied Hudson v. McMillian, 503 U.S. 1 (1992), to hold that these deprivations do not state a constitutional claim. That holding is correct: "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." 503 U.S. at 9 (internal quotations omitted). Cosmetic products are not among the minimal civilized measure of life's necessities.
 
 C. Verbal Harassment
 
 8
 Murray alleges that numerous prison officials repeatedly have made offensive remarks to her with regard to her bodily appearance, her transsexualism, and her presumed sexual preference. The magistrate judge correctly held that verbal abuse cannot state an Eighth Amendment claim. See Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir.1987); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir.1987). If Murray's allegations are true, the behavior of the prison officials was certainly not commendable. Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree.
 
 D. Physical Abuse
 
 9
 Murray alleges that prison officials abused her on three separate occasions. The magistrate judge submitted the first such claim to a jury, and we deal with that claim in Part II below. With respect to the remaining two claims, the magistrate judge held that they did not state a constitutional claim, and we agree.
 
 
 10
 In the second claim, Murray alleges that, on August 28, 1993, Officer Billy Caudill and an unidentified officer approached her in the prison cafeteria, Caudill made an insulting comment regarding her breasts, and the other officer subjected her to a pat-down search during which he unnecessarily touched her breasts. Murray has sued only Caudill, and not the unidentified officer. While under certain circumstances a non-supervisory officer may be liable if he fails to intervene to stop the improper actions of another officer, see McHenry v. Chadwick, 896 F.2d 184, 188 (6th Cir.1990). Caudill is not subject to such liability. There is no allegation that the pat-down search was improper, that Caudill directed the other officer either to search Murray or to touch her breasts, or that the touch lasted long enough that Caudill could have acted to stop it. Under these circumstances, Caudill is not liable for the other officer's actions.
 
 
 11
 Murray's third claim arises from her placement in segregated confinement on September 6, 1993, for her failure to comply with an order to wear a brassiere. Officer William Underwood searched her before taking her to her new quarters. Murray alleges that, during the course of the search, Officer Underwood kicked her legs apart, causing her to lose her balance and fall. That kick does not state a constitutional claim. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (internal quotation omitted). The undisputed facts show that Underwood did not kick Murray because of malice or sadism, but because the kick was reasonably thought to be necessary to complete the pat-down search.
 
 E. Deliberate Indifference to Medical Needs
 
 12
 The policy of the Bureau of Prisons is to provide a transsexual prisoner with the level of female hormones necessary to ensure that she neither progresses nor regresses in the development of feminine attributes. Murray alleges that, when she first entered the federal prison system at FCI Springfield, Missouri, a mistake was made and that she received a prescription for a lower dosage of female hormones than that which she had received previously in the outside world. Murray alleges that the mistake was repeated both at FCI Morgantown and at FCI Ashland. She further alleges that the Chief of Health Services at FCI Ashland, Dr. Lusito Benin, has refused to increase her dosage despite being informed of the error. Under these facts, Murray has failed to state a constitutional claim. Since transsexualism is a recognized medical disorder, and transsexuals often have a serious medical need for some sort of treatment, a complete refusal by prison officials to provide a transsexual with any treatment at all would state an Eighth Amendment claim for deliberate indifference to medical needs. See Phillips v. Michigan Dep't of Corrections, 731 F.Supp. 792, 799 (W.D.Mich.1990), aff'd, 932 F.2d 969 (6th Cir.1991). However, where, as here, the prisoner is receiving treatment, the dosage levels of which are based on the considered professional judgment of a physician, we are reluctant to second-guess that judgment.
 
 
 13
 It is important to emphasize, however, that [the plaintiff] does not have a right to any particular type of treatment, such as estrogen therapy.... [G]iven the wide variety of options available for the treatment of gender dysphoria and the highly controversial nature of some of those options, a federal court should defer to the informed judgment of prison officials as to the appropriate form of medical treatment.
 
 
 14
 Meriwether v. Faulkner, 821 F.2d 408, 413 (7th Cir.1987) (reversing dismissal of complaint where plaintiff had alleged that she had received no treatment); see also Brown v. Zavaras, 63 F.3d 967, 970 (10th Cir.1995) (right to some treatment, but not to estrogen); White v. Farrier, 849 F.2d 322, 327 (8th Cir.1988) (same).
 
 F. Retaliation
 
 15
 After Murray filed her initial complaint in this matter, on the morning of May 14, 1994, Correctional Officer Bryan Miller discovered her in her cell in bed with another inmate, and issued an incident report against Murray. Later that day, Murray was placed in segregated confinement pending the investigation of the charge. Lieutenant John Jones took Murray's statement; in that statement, Murray alleged that the inmate was only sitting on the edge of her bed, and that Officer Miller told her that he would not issue the report if she agreed to dismiss the complaint. On May 25, 1994, Disciplinary Hearing Officer Sam Biafore conducted Murray's hearing and found her guilty of "attempting to engage in sexual activity." Biafore specifically stated that he found Officer Miller's version of events to be more credible than Murray's. Accordingly, he imposed a penalty of fifteen days in segregation.
 
 
 16
 Murray challenges the sufficiency of the evidence for Officer Biafore's findings, the allegedly retaliatory nature of the charge, and the resulting denial of access to the law library during her term of segregated confinement. Her first challenge fails, since a federal court is bound to uphold an imposition of discipline if "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455 (1985). In this case, the incident report provides that evidence.
 
 
 17
 The claim of retaliation also fails. While a prisoner may state a cause of action if he demonstrates that a prison official "intentionally and maliciously framed" him, Cale v. Johnson, 861 F.2d 943, 950 (6th Cir.1988), Murray can make no such showing. The only evidence in the disciplinary hearing was Murray's testimony and the testimony of the officers; Officer Biafore made a credibility determination and accepted the latter testimony. Murray's lack of credibility is demonstrated by her allegation that Lieutenant Jones did not record her allegations, an allegation which is decisively rebutted by the presence of those allegations on Jones's report. In addition, Murray's allegation that Officer Miller framed her is refuted by Officer Biafore's finding that she had in fact committed the offense with which she was charged. "Because the finding was based on some evidence of the violation, the finding essentially checkmates [her] retaliation claim." Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994), (citing Hill ), cert. denied, 115 S.Ct. 2584 (1995); cf. Heck v. Humphrey, 114 S.Ct. 2364, 2372 (1994) (prisoner may not challenge validity of conviction in § 1983 action if that conviction has not been reversed by rendering jurisdiction or by issuance of writ of habeas corpus).
 
 
 18
 Murray's claim for denial of access to the prison's law library is not of constitutional magnitude. A prison may cut off such access for legitimate disciplinary reasons. See Lewis v. Casey, 116 S.Ct. 2174, 2185 (1996). In any event, Murray must demonstrate some prejudice to prove a constitutional violation, such as "the dismissal of an otherwise meritorious claim." Pilgrim v. Littlefield, 92 F.3d 413, 415 (6th Cir.1996). Murray's claims fail because the underlying facts cannot support a claim, not because she could not complete her legal research. Therefore, we uphold the magistrate judge's order of summary judgment in its entirety.
 
 II
 
 19
 Murray alleges that on August 8, 1993, Correctional Officer Timothy Harris isolated her in a bathroom, removed her clothing, and repeatedly touched her breasts and her buttocks. The magistrate judge found that, if true, Murray's allegation would state a constitutional claim and denied Harris's motion for summary judgment. The case proceeded to trial, and a jury found in favor of Harris. Murray appeals, claiming that the magistrate judge erred by allowing one inmate, Gilbert Mims, to testify that Murray had a sexual relationship with an inmate who testified in her favor, William Twyman.
 
 
 20
 Before we proceed to the merits of this claim, we must determine whether it is properly before us. Murray's notice of appeal states only that she appeals the November 7 order of summary judgment, and does not mention the final judgment after the trial. The usual rule is that an appellate court sits only to hear appeals from those judgments that have been specifically identified in the notice of appeal, subject to the exception that an appeal from a final judgment also calls into question all non-final judgments in that case. See McLaurin v. Fisher, 768 F.2d 98, 102 (6th Cir.1985). Although we have held that the designation requirement is not jurisdictional, and we have exercised discretion to consider the underlying merits in a case in which the opposing party was not prejudiced by the defect in the notice of appeal, see Taylor v. United States, 848 F.2d 715, 718 (6th Cir.1988), we do not believe that we should exercise that discretion in this case. Murray failed to provide us with a transcript of the trial, despite being informed by the court that it was her obligation to do so, see 28 U.S.C. § 753(f); Fed.R.App.P. 10(b)(2).[3] Without that transcript, we are unable to determine the propriety of the admission of the challenged testimony. Therefore, we affirm the magistrate judge's November 29 order dismissing the case pursuant to a jury verdict.
 
 III
 
 21
 The orders of the magistrate judge awarding summary judgment on November 7, 1994, and awarding judgment pursuant to a jury verdict on November 29, 1994, are AFFIRMED.
 
 
 
 [1]
 Murray uses the feminine pronoun to refer to herself. Although the government in its brief used the masculine pronoun, for purposes of this opinion we will follow Murray's usage
 
 
 [2]
 Upon the entry of that judgment, the magistrate judge's order that Murray not be transferred to another facility expired, and the Bureau of Prisons relocated Murray to a federal correctional facility in Milan, Michigan. Her term of imprisonment has since expired
 
 
 [3]
 Murray originally requested a transcript, but subsequently withdrew that request