# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-40016
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
January 15, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

NORMAN VARNER,

      Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas

Before SMITH, DENNIS, and DUNCAN, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

Norman Varner, federal prisoner # 18479-078, appeals the denial of his motion to change the name on his judgment of confinement to "Kathrine Nicole Jett." The district court denied the motion as meritless. We conclude that the district court lacked jurisdiction to entertain the motion and so vacate the court's judgment. In conjunction with his appeal, Varner also moves that he be addressed with female pronouns. We will deny that motion.

I.

In 2012, Varner pled guilty to one count of attempted receipt of child pornography and was sentenced to 180 months in prison, to be followed by 15

No. 19-40016

years supervised release. Varner's federal sentence was influenced by his previous convictions at the state level for possession of child pornography and failure to register as a sex offender. In 2018, Varner wrote a letter to the district court requesting that the name on his judgment of committal ("Norman Keith Varner") be changed to reflect his "new legal name of Kathrine Nicole Jett." Varner's letter explained that he "ca[me] out as a transgender woman" in 2015, began "hormone replacement therapy" shortly after, and planned to have "gender reassignment surgery in the near future" in order to "finally become fully female." Attached to Varner's letter was a certified copy of a 2018 order from a Kentucky state court changing Varner's name.

The government opposed Varner's request, arguing principally that Varner alleged no defect in the original judgment and that a "new preferred name" was not a basis for amending a judgment. *See* Fed. R. Crim. P. 36 (upon notice, court may "correct a clerical error in a judgment, order, or other part of the record"). The government also pointed out that, under Bureau of Prisons ("BOP") regulations, Varner would be able to use his preferred name as a secondary name or alias. *See* BOP Policy No. 5800.15, § 402(d). Finally, the government argued that Varner's name change was, in any event, improperly obtained under Kentucky law: Varner swore in his petition that he was then a resident of "Covington, Kentucky," when, in fact, he was at the time incarcerated at a federal facility in Waymart, Pennsylvania.

The district court construed Varner's letter as a motion to correct his judgment of committal and denied it on the merits. The court reasoned that a "new, preferred name is not a legally viable basis to amend the previously entered Judgment," and, moreover, that inmates have no constitutional right to have prison records reflect a new name. Order at 2 (citing *United States v. Baker*, 415 F.3d 1273, 1274 (11th Cir. 2005); *United States v. White*, 490 F. App'x 979, 982 (10th Cir. 2012); *United States v. Jordan*, 162 F.3d 93 (5th Cir.

2

No. 19-40016

1998)). Additionally, the court concluded that Varner "does not appear to have legally changed his name" under Kentucky law because his prison records reflected that he was not a resident of Kentucky when he petitioned for a name change. Order at 2–3 (citing Ky. Rev. Stat. § 401.010). Finally, the court noted that the relief Varner sought is "achievable without amending the Judgment." *Id.* at 3. As the court explained, BOP regulations allow Varner to use "Kathrine Nicole Jett" as a secondary name and also authorize BOP staff "to use either gender-neutral or an inmate's requested gender-specific pronoun or salutation when interacting with transgender inmates." *Id.* (citing BOP Policy No. 5800.15, § 402(d); BOP Policy No. 5200.04, § 11).

Varner appealed the district court's denial of his motion to amend the judgment, which we review *de novo. See United States v. Douglas*, 696 F. App'x 666, 668 (5th Cir. 2017) (per curiam) (citing *United States v. Ramirez-Gonzalez*, 840 F.3d 240, 246 (5th Cir. 2016)); *see also United States v. Davis*, 841 F.3d 1253, 1261 (11th Cir. 2016). Along with his appeal, Varner has filed various motions in our court, including a "motion to use female pronouns when addressing Appellant" and motions to "submit [his] photograph into evidence" or to "appear . . . either by phone, video-conference, or in person."

II.

A.

While the district court's reasons are well-taken, we conclude that Varner's request to change the name on his judgment of commitment was "an unauthorized motion which the district court was without jurisdiction to entertain." *United States v. Early*, 27 F.3d 140, 142 (5th Cir. 1994). Our jurisdiction is predicated upon the valid jurisdiction of the district court, and so we must examine the basis for the district court's jurisdiction. *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000); *Mosley v. Crosby*, 813 F.2d 659 (5th Cir. 1987). "Absent jurisdiction conferred by statute, district courts lack power

to consider claims." *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). "If the district court lacked jurisdiction, '[o]ur jurisdiction extends not to the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.'" *Key*, 205 F.3d at 774 (quoting *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 882 (5th Cir. 1998)). We conclude that Varner's motion was unauthorized by any statute and that the district court therefore lacked jurisdiction to entertain it.

Varner's letter request does not fall into any of the recognized categories of postconviction motions. Although a district court has authority to correct a sentence under Federal Rule of Criminal Procedure 35 and to correct clerical mistakes in judgments and orders under Federal Rule of Criminal Procedure 36, Varner's request does not fall under either rule. The request did not implicate Rule 35 because it was neither made "[w]ithin 14 days after sentencing," nor was it made by the government. *See* Fed. R. Crim. P. 35(a) (allowing court to correct "arithmetical, technical, or other clear error" in sentence "[w]ithin 14 days after sentencing"); *id.* 35(b)(1), (2) (allowing sentence reduction on certain grounds "[u]pon the government's motion"). Nor did the request implicate Rule 36 because it did not seek correction of a "clerical error in [the] judgment." Fed. R. Crim. P. 36. A clerical error occurs "when the court intended one thing but by merely clerical mistake or oversight did another." *United States v. Buendia-Rangel*, 553 F.3d 378, 379 (5th Cir. 2008); *see also Ramirez-Gonzalez*, 840 F.3d at 247 (Rule 36 is a "limited tool[ ] meant only to correct mindless and mechanistic mistakes") (internal quotation marks and citations omitted). A name change obtained six years after entry of judgment is not a clerical error within the meaning of Rule 36.

Nor was Varner's request authorized under 18 U.S.C. § 3582(c)(2) because it was not based upon an amendment to the Sentencing Guidelines. *See* § 3582(c)(2) (permitting court to modify term of imprisonment "based on a

No. 19-40016

sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(o)"). Additionally, the district court could not construe the request as a motion arising under 18 U.S.C. § 3742, which applies only to direct appeals. *See Early*, 27 F.3d at 142 (explaining that relief under § 3742 is "available . . . only upon direct appeal of a sentence or conviction"). Finally, the request did not arise under 28 U.S.C. § 2255 because Varner did not challenge the validity of his conviction or sentence. *See United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994) (explaining "Congress . . . meant to limit the types of claims cognizable under § 2255 to claims relating to unlawful custody"). In sum, Varner's request to change the name on his judgment was an unauthorized motion that the district court lacked jurisdiction to entertain.

B.

We next consider Varner's motion for the "use [of] female pronouns when addressing [Varner]." We understand Varner's motion as seeking, at a minimum, to require the district court and the government to refer to Varner with female instead of male pronouns.[1] Varner cites no legal authority supporting this request. Instead, Varner's motion simply states that "I am a woman" and argues that failure to refer to him with female pronouns "leads me to feel that I am being discriminated against based on my gender identity." Varner's reply brief elaborates that "[r]eferring to me simply as a male and with male pronouns based solely on my biological body makes me feel very uneasy and disrespected." We deny the motion for the following reasons.

---

[1] The district court's order refers to Varner with male pronouns, as does the government's letter brief.

5

No. 19-40016

First, no authority supports the proposition that we may require litigants, judges, court personnel, or anyone else to refer to gender-dysphoric[2] litigants with pronouns matching their subjective gender identity. Federal courts sometimes choose to refer to gender-dysphoric parties by their preferred pronouns.[3] On this issue, our court has gone both ways. *Compare Rush v. Parham*, 625 F.2d 1150, 1153 n.2 (5th Cir. 1980) (adopting "for this opinion"

---

[2] "Gender dysphoria" refers to a condition where persons perceive a "marked incongruence" between their birth sex and "their experienced / expressed gender." *See Gibson v. Collier*, 920 F.3d 212, 217 (5th Cir. 2019) (citing American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-5"), at 452) (cleaned up). Someone suffering from this condition may identify with the opposite sex, but the condition "may include a desire to be of an alternative gender" beyond the "binary" of male and female. DSM-5 at 453. The condition affects a tiny fraction of people. *See* DSM-5 at 454 (estimating prevalence for adult males from "0.0005% to 0.014%" and for adult females from "0.002% to 0.003%"). When it affects children, the condition often does not persist into adolescence or adulthood. *See id.* at 455 (estimating persistence for boys from "2.2% to 30%" and for girls from "12% to 50%"). Finally, "gender dysphoria" is to be distinguished from a "disorder of sex development," in which the development of male or female sex organs is affected by genetic or hormonal factors. *See id.* at 451, 456.

[3] *See, e.g.*, *Farmer v. Haas*, 990 F.2d 319, 320 (7th Cir. 1993) ("[T]he defendants say 'he,' but Farmer prefers the female pronoun and we shall respect her preference."); *Farmer v. Circuit Court of Maryland for Baltimore Cty.*, 31 F.3d 219, 220 n.1 (4th Cir. 1994) ("This opinion, in accord with Farmer's preference, will use feminine pronouns."); *Murray v. U.S. Bureau of Prisons*, 106 F.3d 401 n.1 (6th Cir. 1997) ("Murray uses the feminine pronoun to refer to herself. Although the government in its brief used the masculine pronoun, for purposes of this opinion we will follow Murray's usage."); *Schwenk v. Hartford*, 204 F.3d 1187, 1192 (9th Cir. 2000) ("In using the feminine rather than the masculine designation when referring to Schwenk, we follow the convention of other judicial decisions involving male-to-female transsexuals which refer to the transsexual individual by the female pronoun."); *Cuoco v. Moritsugu*, 222 F.3d 99, 103, 103 n.1 (2d Cir. 2000) ("We . . . refer to the plaintiff using female pronouns" because "[s]he [is] a preoperative male to female transsexual."); *Smith v. Rasmussen*, 249 F.3d 755, 757 (8th Cir. 2001) ("As did the parties during the proceedings in the district court, we will refer to Smith, in accordance with his preference, by using masculine pronouns."); *Kosilek v. Spencer*, 740 F.3d 733, 737 (1st Cir. 2014) ("We will refer to Kosilek as her preferred gender of female, using feminine pronouns."); *Pinson v. Warden Allenwood USP*, 711 F. App'x 79, 80 (3d Cir. 2018) ("Because Pinson has referred to herself using feminine pronouns throughout this litigation, we will follow her example."); *but see Jeune v. U.S. Atty. Gen.*, 810 F.3d 792, 796 n.1 (11th Cir. 2016) (despite petitioner's use of "feminine pronouns in referring to himself on appeal," using "masculine pronouns" given that petitioner previously "identified as a male, and the immigration judge and BIA so referred to him, using masculine pronouns").

the "convention" in "medical literature" of using "feminine pronouns . . . to describe a transsexual with a male biological gender"), *with Gibson*, 920 F.3d at 217 n.2 (using "male pronouns" to refer to gender-dysphoric prisoner who was "born male" but has "lived as a female since the age of 15"); *see also Praylor v. Tex. Dep't of Crim. Justice*, 430 F.3d 1208, 1208–09 (5th Cir. 2005) (per curiam) (using male pronouns to refer to "transsexual[ ]" inmate who sought injunction requiring prison "to provide him with hormone therapy and brassieres"). But the courts that have followed this "convention," *Schwenk*, 204 F.3d at 1192, have done so purely as a courtesy to parties. *See, e.g., Farmer v. Haas*, 990 F.2d at 320 (using female pronouns to "respect [petitioner's] preference"). None has adopted the practice as a matter of binding precedent, and none has purported to obligate litigants or others to follow the practice.

Varner's motion in this case is particularly unfounded. While conceding that "biological[ly]" he is male, Varner argues female pronouns are nonetheless required to prevent "discriminat[ion]" based on his female "gender identity." But Varner identifies no federal statute or rule requiring courts or other parties to judicial proceedings to use pronouns according to a litigant's gender identity. Congress knows precisely how to legislate with respect to gender identity discrimination, because it has done so in specific statutes. *See Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 338 (5th Cir. 2019) (Ho, J., concurring) (citing *Hively v. Ivy Tech Comm. Coll. of Indiana*, 853 F.3d 339, 363–64 (7th Cir. 2017) (Sykes, J., dissenting)) (observing that "both Congress and various state legislatures have expressly prohibited . . . gender identity discrimination by using the term[ ] . . . 'gender identity' discrimination"). As Judge Sykes pointed out in her *Hively* dissent, Congress has expressly proscribed gender identity discrimination in laws such as the Violence Against Women Act, 34 U.S.C. § 12291(b)(13)(A), the federal Hate Crimes Act, 18 U.S.C. § 249(a)(2)(A), and elsewhere. *See id.* at 363–64 (citing 42 U.S.C. § 3716(a)(1)(C); 20 U.S.C.

No. 19-40016

§ 1092(f)(1)(F)(ii); 42 U.S.C. § 294e-1(b)(2)). But Congress has said nothing to prohibit courts from referring to litigants according to their biological sex, rather than according to their subjective gender identity.

Second, if a court were to compel the use of particular pronouns at the invitation of litigants, it could raise delicate questions about judicial impartiality. Federal judges should always seek to promote confidence that they will dispense evenhanded justice. *See* Canon 2(A), Code of Conduct for United States Judges (requiring judges to "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary"). At its core, this judicial impartiality is "the lack of bias for or against either party to the proceeding," which "assures equal application of the law." *Repub. Party of Minn. v. White*, 536 U.S. 765, 775–76 (1992) (cleaned up); *see also, e.g., Bunton v. Quarterman,* 524 F.3d 664, 672 (5th Cir. 2008) (explaining that defendants' "right to a fair trial" is in part "fulfilled by a judicial officer who impartially presides over the trial") (citing *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)). Increasingly, federal courts today are asked to decide cases that turn on hotly-debated issues of sex and gender identity. *See, e.g., Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 2636 (2019) (evaluating school district policy allowing students to use bathrooms and locker rooms corresponding to their gender identity instead of their sex); *Adams by & through Kasper v. Sch. Bd. of St. Johns Cty., Fla.*, 318 F. Supp. 3d 1293, 1296 (M.D. Fla. 2018) (stating that "what this case is about" is "whether Drew Adams is a boy"). In cases like these, a court may have the most benign motives in honoring a party's request to be addressed with pronouns matching his "deeply felt, inherent sense of [his] gender." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 768 (9th Cir. 2019) (cleaned up). Yet in doing so, the court may unintentionally convey its tacit approval of the litigant's underlying legal position. *See, e.g., United States v. Candelaria-Gonzalez*, 547

No. 19-40016

F.2d 291, 297 (5th Cir. 1977) (observing that a trial judge "must make every effort to preserve the appearance of strict impartiality," including by "exhibit[ing] neutrality in his language"). Even this appearance of bias, whether real or not, should be avoided.

Third, ordering use of a litigant's preferred pronouns may well turn out to be more complex than at first it might appear. It oversimplifies matters to say that gender dysphoric people merely prefer pronouns opposite from their birth sex—"her" instead of "his," or "his" instead of "her." In reality, a dysphoric person's "[e]xperienced gender may include alternative gender identities beyond binary stereotypes." DSM-5, at 453; *see also, e.g.*, Dylan Vade, *Expanding Gender and Expanding the Law: Toward a Social and Legal Conceptualization of Gender that Is More Inclusive of Transgender People*, 11 Mich. J. Gender & L. 253, 261 (2005) (positing that gender is not binary but rather a three-dimensional "galaxy"). Given that, one university has created this widely-circulated pronoun usage guide for gender-dysphoric persons:

| 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|
| (f)ae | (f)aer | (f)aer | (f)aers | (f)aerself |
| e/ey | em | eir | eirs | eirself |
| he | him | his | his | himself |
| per | per | pers | pers | perself |
| she | her | her | hers | herself |
| they | them | their | theirs | themself |
| ve | ver | vis | vis | verself |
| xe | xem | xyr | xyrs | xemself |
| ze/zie | hir | hir | hirs | hirself |

*Pronouns – A How To Guide,* LGBTQ+ Resource Center, University of Wisconsin-Milwaukee, https://uwm.edu/lgbtrc/support/gender-pronouns/; *see also* Jessica A. Clark, *They, Them, and Theirs*, 132 Harv. L. Rev. 894, 957

9

No. 19-40016

(2019) (explaining "[s]ome transgender people may request . . . more unfamiliar pronouns, such as ze (pronounced 'zee') and hir (pronounced 'hear'))." If a court orders one litigant referred to as "her" (instead of "him"), then the court can hardly refuse when the next litigant moves to be referred to as "xemself" (instead of "himself"). Deploying such neologisms could hinder communication among the parties and the court. And presumably the court's order, if disobeyed, would be enforceable through its contempt power. *See Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) ("A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order."); *see also* 18 U.S.C. § 401. When local governments have sought to enforce pronoun usage, they have had to make refined distinctions based on matters such as the types of allowable pronouns and the intent of the "misgendering" offender. *See* Clark, 132 Harv. L. Rev. at 958–59 (discussing New York City regulation prohibiting "intentional or repeated refusal" to use pronouns including "them/them/theirs or ze/hir" after person has "made clear" his preferred pronouns).[4] Courts would have to do the same. We decline to enlist the federal judiciary in this quixotic undertaking.

\*\*\*

---

[4] *See also* NYC Commission on Human Rights, *Legal Enforcement Guidance on Discrimination on the Basis of Gender Identity or Expression: Local Law No. 3 (2002); N.Y.C. Admin. Code § 8-102(23)*, 4-5 (2015) https://www1.nyc.gov/assets/cchr/downloads/pdf/publications/GenderID_InterpretiveGuide_2015.pdf [https://perma.cc/C994-QAMV]; D.C. Mun. Regs. tit. 4, § 808.2(a) (2017) (making evidence of "unlawful harassment and hostile environment," *inter alia*, "[d]eliberately misusing an individual's preferred name form of address or gender-related pronoun," in light of the "totality of the circumstances . . . including the nature, frequency, and severity of the behavior, [and] whether it is physically threatening or humiliating, or a mere offensive utterance").

No. 19-40016

We VACATE the district court's judgment. Varner's motion to require use of female pronouns, to submit a photograph, and to appear are DENIED. Varner's motion to file an out-of-time reply brief is GRANTED.

No. 19-40016

JAMES L. DENNIS, Circuit Judge, dissenting.

I respectfully dissent. In my view, the majority errs in (1) deciding that the district court lacked jurisdiction to entertain and deny Varner's motion under Rule 36; (2) overbroadly construing Varner's motion in this court seeking the use of feminine pronouns; and (3) denying Varner's request to refer to her using female pronouns.

## I.

The majority errs in concluding that the district court did not have jurisdiction to consider and rule on Varner's pro-se motion to amend the judgment of conviction to recognize her change of name. Federal Rule of Criminal Procedure 36 allows the court, at any time, to correct "a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." FED. R. CRIM. PROC. 36. The district court explained that the name change, which occurred several years after the finality of the judgment, did not constitute a clerical error in that judgment that could be corrected under Federal Rule of Criminal Procedure 36 and that Varner's motion did not suggest any other rule or statute under which the name change amendment could be made. The majority determines that because Varner's request to amend the judgment of conviction fails on the merits under Rule 36, the district court lacked jurisdiction to entertain her motion. I disagree.

We have repeatedly denied relief under Rule 36 when the motion failed on the merits without questioning the district court's jurisdiction to entertain the motion. *See United States v. Ramirez-Gonzalez,* 840 F.3d 240, 247 (5th Cir. 2016) (affirming district court's denial of defendant's Rule 36 motion because "there is no error to be corrected"); *United States v. Buendia-Rangel,* 553 F.3d 378, 379 (5th Cir. 2008) (declining defendant's Rule 36 motion because "[w]e find no clerical error in the judgment below"); *United States v. Slanina,* 359

F.3d 356, 357 (5th Cir. 2004) (affirming district court's denial of defendant's Rule 36 motion because defendant "has not shown that the discrepancy between the orally imposed sentence and the written judgment is a clerical mistake or oversight which the district court may correct pursuant to Rule 36"). Moreover, we have evaluated prisoners' motions to change their names in the judgment of conviction, again without questioning the district court's jurisdiction. *See United States v. Smith*, 520 F. App'x 248, 249 (5th Cir. 2013) ("[W]e find no error in the district court's denial of the motion to change Smith's committed name."); *United States v. Jordan*, No. 98-10287, 1998 WL 770660, at *1 (5th Cir. Oct. 14, 1998).

The cases cited by the majority as authority for its conclusion that the district court lacked jurisdiction to entertain Varner's motion are inapposite here. For example, in *United States v. Early*, 27 F.3d 140, 141 (5th Cir. 1994), the defendant appealed the district court's denial of his motion for a reduction of his sentence, arguing that this court had jurisdiction under 18 U.S.C. § 3742(a). We found that § 3742 provided no jurisdictional basis for Early's motion because "[t]he provisions for modification of a sentence under § 3742 are available to a defendant only upon direct appeal of a sentence or conviction," and Early did not file a notice of appeal from final judgment. *Id.* at 142. We also evaluated other statutes and determined that none provided a jurisdictional basis for Early's motion to reduce his sentence. *Id.* at 141-42.

Unlike the defendant's motion in *Early*, Federal Rule of Criminal Procedure 36 provides the jurisdictional basis for Varner's motion. The rule plainly provides a court with authority to, at any time, correct a clerical error in its judgment. *See* FED. R. CRIM. P. 36. This necessarily recognizes a court's authority to entertain motions to ascertain whether there is an error that falls within the rule's ambit and therefore must be corrected. I have found no cases interpreting a failure to succeed on the merits under Rule 36 as precluding a

13

court's jurisdiction to entertain the motion. I agree with the majority that "[a] name change obtained six years after entry of judgment is not a clerical error within the meaning of Rule 36," but I believe this is a basis for affirming the district court's denial of Varner's motion, not for concluding that the district court lacked jurisdiction to consider it. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case."). The Supreme Court has cautioned against "drive-by jurisdictional" rulings similar to the majority's here, stating:

> Judicial opinions, the Second Circuit incisively observed, "often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." *Da Silva* [*v. Kinsho Int'l Corp.*], 229 F.3d [358,] 361 [(2d Cir. 2000)]. We have described such unrefined dispositions as "drive-by jurisdictional rulings" that should be accorded "no precedential effect" on the question whether the federal court had authority to adjudicate the claim in suit. *Steel Co.*, 523 U.S. at 91.

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006).

I do not question the district court's jurisdiction to entertain Varner's motion to have her judgment of conviction altered to reflect her new name, and I would affirm that judgment for the reasons stated by the district court.

## II.

In addition to her appeal, Varner, a pro-se prisoner, submitted the following motion to this court:

No. 19-40016

Motion to Use Female Pronouns When Addressing Appellant

I am a woman and not referring to me as such leads me to feel that I am being discriminated against based on my gender identity. I am a woman—can I not be referred to as one?

The majority concludes that, based on Varner's two-sentence, pro-se motion, Varner seeks, "at a minimum, to require the district court and the government to refer to Varner with female instead of male pronouns." But Varner's request is not so broad. The terms "district court" and "government" are not mentioned in Varner's motion. The motion was filed in *this* court and is titled "Motion to Use Female Pronouns When Addressing Appellant." Varner's use of the term "appellant" to describe herself leads to the conclusion that her request is confined to the terms used by this court in this proceeding.

In my view, Varner is simply requesting that *this court, in this proceeding*, refer to Varner using her preferred gender pronouns. Not only is this the most faithful interpretation of her motion given the language she uses, it is also the narrowest. Because I would affirm the district court for the reasons it assigns without writing further, I think it is not necessary to use any pronoun in properly disposing of this appeal.

If it were necessary to write more and use pronouns to refer to Varner, I would grant Varner the relief she seeks. As the majority notes, though no law compels granting or denying such a request, many courts and judges adhere to such requests out of respect for the litigant's dignity. *See, e.g.*, *Kosilek v. Spencer*, 740 F.3d 733, 737 n.3 (1st Cir. 2014) ("We will refer to Kosilek as her preferred gender of female, using feminine pronouns."); *Cuoco v. Moritsugu*, 222 F.3d 99, 103, 103 n.1 (2d Cir. 2000) ("We . . . refer to the plaintiff using female pronouns" because "[s]he [is] a preoperative male to female transsexual."); *Pinson v. Warden Allenwood USP*, 711 F. App'x 79, 80 n.1 (3d

Cir. 2018) ("Because Pinson has referred to herself using feminine pronouns throughout this litigation, we will follow her example."); *Farmer v. Circuit Court of Md. for Baltimore Cty.*, 31 F.3d 219, 220 n.1 (4th Cir. 1994) ("This opinion, in accord with Farmer's preference, will use feminine pronouns."); *Murray v. U.S. Bureau of Prisons*, 106 F.3d 401, 1997 WL 34677, at \*1 n.1 (6th Cir. 1997) ("Murray uses the feminine pronoun to refer to herself. Although the government in its brief used the masculine pronoun, for purposes of this opinion we will follow Murray's usage."); *Farmer v. Haas*, 990 F.2d 319, 320 (7th Cir. 1993) ("[T]he defendants say 'he,' but Farmer prefers the female pronoun and we shall respect her preference."); *Smith v. Rasmussen*, 249 F.3d 755, 756 n.2 (8th Cir. 2001) ("As did the parties during the proceedings in the district court, we will refer to Smith, in accordance with his preference, by using masculine pronouns."); *Schwenk v. Hartford*, 204 F.3d 1187, 1192 n.1 (9th Cir. 2000) ("In using the feminine rather than the masculine designation when referring to Schwenk, we follow the convention of other judicial decisions involving male-to-female transsexuals which refer to the transsexual individual by the female pronoun."); *Qz'etax v. Ortiz,* 170 F. App'x 551, 553 (10th Cir. 2006) ("[W]e have no objection to Appellant's motion for the continued usage of proper female pronouns and will continue to use them when referring to her.").

Ultimately, the majority creates a controversy where there is none by misinterpreting Varner's motion as requesting "at a minimum, to require the district court and the government to refer to Varner with female instead of male pronouns," when she in fact simply requests that this court address her using female pronouns while deciding her appeal. The majority then issues an advisory opinion on the way it would answer the hypothetical questions that only it has raised. Such an advisory opinion is inappropriate, unnecessary, and beyond the purview of federal courts. *See F.C.C. v. Pacifica Found.*, 438

U.S. 726, 735 (1978) ("[F]ederal courts have never been empowered to issue advisory opinions."); *Whitehouse Hotel Ltd. P'ship v. Comm'r*, 615 F.3d 321, 343 (5th Cir. 2010) (Garza, J., concurring in part) ("Federal courts are only permitted to rule upon an actual 'case or controversy,' and lack jurisdiction to render merely advisory opinions beyond the rulings necessary to resolve a dispute."); *In re Michaelson*, 511 F.2d 882, 893 (9th Cir. 1975) ("This Court does not intend to and cannot, issue an advisory opinion on a hypothetical fact situation."). The majority's lengthy opinion is dictum and not binding precedent in this court. *United States v. Becton*, 632 F.2d 1294, 1296 n.3 (5th Cir. 1980) ("We are not bound by dicta, even of our own court.").

For these reasons, I respectfully but emphatically dissent.