Filed 11/21/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JASMINE MAREZA ZARAZUA,<br><br>    Defendant and Appellant. | A163474<br><br>(Solano County<br>Super. Ct. No. FCR344711) |

At trial for recklessly evading a peace officer and other offenses, the prosecutor repeatedly misgendered Jasmine Mareza Zarazua — who identifies as male — in the presence of the jury.[1]  Defense counsel moved for a mistrial and for a curative admonition on the grounds of prosecutorial misconduct, but the trial court denied the motion and declined to admonish the jury.  On appeal, Zarazua contends the failure to use masculine pronouns constituted prosecutorial misconduct which, in the absence of a curative admonition, was prejudicial.

Parties are to be treated with respect, courtesy, and dignity — including the use of preferred pronouns.  Failure to do so offends the administration of justice.  Nevertheless, given the record here, we conclude any misconduct was not prejudicial and therefore affirm.

---

[1] Misgendering is "the assignment of a gender with which a party does not identify, through the misuse of gendered pronouns, titles, names, and honorifics." (McNamarah, *Misgendering* (2021) 109 Cal. L.Rev. 2227, 2232.) We refer to Zarazua using masculine pronouns.

1

## BACKGROUND

In April 2019, a Rio Vista police officer saw Zarazua driving a SUV with no rear license plate. The officer tried to conduct a traffic stop, but Zarazua failed to yield. Instead — and while driving with a suspended license — he led law enforcement officers on a 15-minute pursuit during which he committed numerous traffic violations. While evading officers, Zarazua drove into a gated retirement community where he nearly collided with a truck, spun out of control, and crashed into the bushes. Then he got out of the SUV and ran from pursuing officers. Eventually, officers arrested him.

At the time of the offenses — and at the commencement of the prosecution — Zarazua identified as female. Trial began in July 2021. During jury selection, defense counsel advised prospective jurors that prosecution witnesses would "refer to Mr. Zarazua as she. And Mr. Zarazua . . . no longer identifies as she. Mr. Zarazua identifies [as male] and prefers the pronoun he." Counsel asked the jurors to raise their hands if they had "thought of that already." Fourteen did so. Then counsel said the trial court would instruct them not to let bias of any kind — including gender bias — affect their decision and asked several jurors whether they would have a "problem" if Zarazua "identifies as he when the officers identified him as she." Each juror answered "no."

After reminding prospective jurors they could not "punish" Zarazua for his gender identity, the prosecutor asked whether they would give him a "benefit" because of the gender transition. The jurors indicated they would not. As jury selection continued, counsel for both parties queried the jurors on gender identity. Each juror disclaimed feelings of sympathy toward, or bias against, Zarazua based on his gender transition.

2

At the outset of his brief opening statement — which comprised three pages of the reporter's transcript — the prosecutor referred to Zarazua using masculine pronouns. Thereafter, the prosecutor misgendered Zarazua several times, prompting defense counsel to object "to the identification of my client as she. We've been identifying him as he this entire time. Mr. Zarazua does respectfully request to be referred to as he." The trial court instructed the prosecutor to "proceed with that in mind," and the prosecutor remarked, "That is in mind. It's not intentional." The prosecutor resumed his opening statement, during which he misgendered Zarazua eight additional times. Defense counsel did not object.

Outside the jury's presence, defense counsel moved for a mistrial on the grounds of prosecutorial misconduct. According to defense counsel, the prosecutor's failure to use masculine pronouns — irrespective of intent — belittled and denigrated him and inflamed the jury's passions, fears, and prejudices. Counsel lodged an objection "to every instance where Mr. Zarazua was misgendered" and requested the trial court issue "a curative admonishment . . . that it is improper to denigrate a defendant." In opposition, the prosecutor argued the misgendering was accidental, said he was "trying to be mindful" of Zarazua's gender, and noted the defendant "went as Ms. Zarazua" at the time of the incident. The prosecutor apologized to Zarazua, but strenuously denied engaging in misconduct, insisting he did not "denigrate the defendant in terms of inflaming the passions of the jury." As the prosecutor explained, "[w]e know the passions of the jury aren't inflamed because we talked to all of these jurors about these issues, and they all said they wouldn't let the defendant's gender identity" affect them.

The trial court denied the mistrial motion. It found the misgendering unintentional and concluded it did not constitute prosecutorial misconduct or

3

inflame "the jury to the extent that a mistrial [was] required." The court denied the request for a curative admonition without prejudice and suggested defense counsel renew the request when the parties discussed jury instructions. Defense counsel did not renew the request, but the court gave CALCRIM No. 200, which directed jurors not to let sympathy, prejudice, or bias — including bias based on Zarazua's gender identity — affect their decision.

During initial closing argument, the prosecutor misgendered Zarazua four times. Defense counsel objected based on prosecutorial misconduct; the trial court told the prosecutor, "[w]atch . . . your pronouns," and the prosecutor apologized. The prosecutor used incorrect pronouns twice during rebuttal closing; both times, defense counsel objected and the court reminded the prosecutor to use the correct pronouns. The prosecutor apologized and, on one occasion, offered to slow down so "that doesn't happen again."

After deliberating for fewer than two and a half hours, the jury convicted Zarazua of all charges: reckless evading a peace officer, resisting a police officer, hit and run driving resulting in property damage, and driving with a suspended license. The trial court suspended imposition of sentence, placed Zarazua on probation, and ordered him to serve jail time.

## DISCUSSION

Zarazua contends his convictions must be reversed because the misgendering constituted prosecutorial misconduct which, in the absence of a curative admonition, was prejudicial.

We begin by reciting the well-established standards governing prosecutorial misconduct claims. A prosecutor's conduct " 'violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction

4

a denial of due process." [Citation.] But conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' " (*People v. Rhoades* (2019) 8 Cal.5th 393, 418.) Under state law, "bad faith on the prosecutor's part is not required." (*People v. Centeno* (2014) 60 Cal.4th 659, 666.)

To prevail on a claim of prosecutorial misconduct premised on the prosecutor's remarks to the jury, the defendant must show that, in the context of the argument as a whole and the instructions given to the jury, "there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno*, *supra*, 60 Cal.4th at p. 667.) Prosecutorial misconduct may result in reversal under federal law if the error "was not 'harmless beyond a reasonable doubt,' " and it may result in reversal "under state law if there was a 'reasonable likelihood of a more favorable verdict in the absence of the challenged conduct.' " (*People v. Rivera* (2019) 7 Cal.5th 306, 333–334.)

Presuming the prosecutor's repeated misgendering of Zarazua constituted misconduct, it was nevertheless harmless. (*People v. Wright* (2021) 12 Cal.5th 419, 444.)[2] During jury selection, defense counsel notified

_____

[2] Though we needn't decide whether misconduct occurred, we note that because of the unique function prosecutors perform in representing the interests of — and exercising the power of — the state, they " 'are held to an elevated standard of conduct' " (*People v. Peoples* (2016) 62 Cal.4th 718, 792) and should use a defendant's preferred pronouns "out of respect for the

prospective jurors that prosecution witnesses might misgender Zarazua, and counsel for both parties acknowledged his gender identity and exhorted jurors not to "punish" him for the gender transition, or to let gender bias influence their decision. The jurors confirmed they could remain impartial. When the prosecutor misgendered Zarazua during opening and closing arguments, the prosecutor apologized and acknowledged the mistake. And the trial court reminded the prosecutor to use correct pronouns and subsequently instructed the jurors not to let bias of any kind — including gender identity bias — affect their decision (CALCRIM No. 200). We presume the jury followed the court's instructions. (*People v. Thompson* (2022) 83 Cal.App.5th 69, 92.) Additionally, the evidence of guilt was overwhelming and largely uncontested.

Given the voir dire on gender identity, the directive in CALCRIM No. 200, and the overwhelming evidence of guilt, we conclude the prosecutor's failure to use masculine pronouns was "harmless under any standard of prejudice." (*People v. Smith* (2015) 61 Cal.4th 18, 51–52.) There is no indication the jury interpreted the prosecutor's failure to use Zarazua's correct pronouns "in the most damaging light" (*People v. Ramirez* (2022)

---

litigant's dignity." (*United States v. Varner* (5th Cir. 2020) 948 F.3d 250, 260 [dis. opn. of Dennis, J.]; CACI No. 118 ["attorneys and courts should take affirmative steps to ensure that they are using correct personal pronouns" to comply with state policy according "intersex, transgender, and nonbinary people . . . full legal recognition and equal treatment under the law" and to ensure their "dignity and privacy."].) Not doing so undermines the administration of justice, can inject prejudice into proceedings, and can suggest a defendant is not credible. (McNamarah, *Misgendering as Misconduct* (2020) 68 UCLA L.Rev. Disc. 40, 63.) Additionally, to ensure a litigant is treated with dignity, a trial court can admonish counsel to use the litigant's preferred pronouns. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 795 [one purpose of admonitions " 'is to avoid repetition of the remarks and thus obviate the necessity of a new trial' "].)

13 Cal.5th 997, 1130) or that the misgendering influenced the verdict. (*Chapman v. California* (1967) 386 U.S. 18, 24.)  Finally, there is no realistic possibility Zarazua would have obtained a more favorable result but for the misgendering.  (See *People v. Arredondo* (2018) 21 Cal.App.5th 493, 502–505 [prosecutor's "relentless" use of epithets to describe defendants was harmless as to murder convictions and certain enhancements].)

Zarazua does not persuasively argue otherwise.  Instead, he insists prejudice should be presumed because the trial court did not issue a curative admonition.  This claim is forfeited.  "As a general matter, when a trial court denies a motion without prejudice the matter is forfeited if not renewed." (*People v. Mills* (2010) 48 Cal.4th 158, 170.)  Here, the court denied defense counsel's request for an admonition without prejudice and suggested counsel renew the request when it was time to instruct the jury.  By failing to do so, counsel forfeited the argument on appeal.  (*Id.* at p. 170.)  We acknowledge a curative admonition may be most effective at the moment the objectionable conduct occurs, but when the court denies a request for an admonition without prejudice, counsel must renew the request and press for a final ruling.  (See *People v. Johnson* (2018) 6 Cal.5th 541, 586; *People v. Brewer* (2000) 81 Cal.App.4th 442, 459.)  The argument also fails on the merits.  We decline Zarazua's invitation to "presume reversible prejudice" in the absence of a curative admonition or to analogize the misgendering to the use of "unjustified removal of jurors based on race" in violation of *Batson v. Kentucky* (1986) 476 U.S. 79 and *People v. Wheeler* (1978) 22 Cal.3d 258. For the reasons discussed above, the court's refusal to admonish the jury was not — on this record — prejudicial.

Zarazua's other arguments do not convince us reversal is required. For example, he asserts the trial court, in denying his mistrial motion, erroneously focused on whether the misgendering was intentional rather than on whether it was prejudicial. We disagree. In denying the motion, the court found the misgendering did not constitute prosecutorial misconduct or inflame "the jury to the extent that a mistrial [was] required." Thus, the court impliedly determined the prosecutor's failure to use masculine pronouns was not incurably prejudicial. This conclusion was not an abuse of discretion. (*People v. Phillips* (2022) 75 Cal.App.5th 643, 691; *People v. Schultz* (2020) 10 Cal.5th 623, 673.)

In closing, we emphasize that we do not condone the prosecutor's repeated misgendering of Zarazua. Moreover, we note trial courts have an obligation to ensure litigants and attorneys are treated with respect, courtesy, and dignity — including the use of preferred pronouns. When court proceedings fall short of that, judges should take affirmative steps to address the issue. Nevertheless, on this record, we conclude the prosecutor's failure to use masculine pronouns was not prejudicial. We acknowledge there may be instances when misgendering is so overt, malicious, and calculating that it " ' "infects the trial with such unfairness as to make the conviction a denial of due process." ' " (*People v. Rhoades, supra*, 8 Cal.5th at p. 418.) But this is not such a case.

## DISPOSITION

The judgment is affirmed.

_____

Rodríguez, J.

WE CONCUR:

_____

Fujisaki, Acting P. J.

_____

Petrou, J.

A163474

9

Superior Court of Solano County, Jeffrey C. Kauffman, Judge.

David A. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Donna M. Provenzano and Clarissa Limón, Deputy Attorneys General, for Plaintiff and Respondent.